818 So.2d 1005 (2002)
Renee T. BOURGEOIS
v.
Andre Gerard BOURGEOIS.
No. 2000 CA 2149.
Court of Appeal of Louisiana, First Circuit.
May 10, 2002.
*1006 Madro Bandaries, Howard P. Elliott, Jr., New Orleans, for Plaintiff/Appellee Renee T. Bourgeois.
*1007 David H. Hardy, Navratil, Hardy & Bourgeois, Baton Rouge, for Defendant/Appellant Andre G. Bourgeois.
Before: CARTER, C.J., PARRO, KUHN, LANIER,[1] and CLAIBORNE,[2] JJ.
PARRO, J.
Andre G. Bourgeois (Andre) appeals from a trial court judgment awarding his former wife, Renee T. Bourgeois (Renee), the sum of $4,886.44 for financial contributions she made to his education during their marriage. For the following reasons, the judgment is reversed.

Facts and Procedural History
Andre and Renee were married in June 1985. Two months later, in August, Andre began law school. Following graduation in December 1988, Andre began practicing law. Although both were employed on a full time basis when they wedded, Andre discontinued working when school began because school rules prohibited him from holding employment during the first year. To assist with living expenses, Andre obtained a student loan in the amount of $5,000. In the summer of 1986, Andre resumed working. In September 1991, less than three years following his law school graduation, the parties separated.
Subsequent to their divorce on April 15, 1992, Renee filed a claim on November 10, 1994, pursuant to LSA-C.C. art. 121 for the financial contributions she had made to Andre's legal education. After a hearing on this claim, the trial court issued written reasons for judgment dated December 15, 1998. Judgment in favor of Renee for $4,886.44 in this matter was signed on May 21, 1999. In this judgment, Renee was awarded legal interest from December 15, 1998, until paid. Following the denial of his motion for a new trial, Andre appealed, contending the trial court erred in (1) including contributions made by Renee prior to August 30, 1986, the effective date of the predecessor article to LSA-C.C. art. 121, (2) failing to eliminate or decrease Renee's award based on a finding that she substantially benefited from Andre's enhanced earning power during the term of their marriage, and (3) awarding legal interest from the date written reasons were issued rather than the date the judgment was signed.

Standard of Review
The appellate court's review of fact is governed by the manifest error clearly wrong standard. The two-part test for the appellate review of a factual finding is: 1) whether there is a reasonable factual basis in the record for the finding of the trial court, and 2) whether the record further establishes that the finding is not manifestly erroneous. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Thus, if there is no reasonable factual basis in the record for the trial court's finding, no additional inquiry is necessary for a finding of manifest error. However, if a reasonable factual basis exists, an appellate court may set aside a trial court's factual finding only if, after reviewing the record in its entirety, it determines the trial court's finding was clearly wrong. See Stobart v. State, through Department of Transportation and Development, 617 So.2d 880, 882 (La. 1993).
*1008 Appellate review of questions of law is simply review of whether the trial court was legally correct or legally incorrect. Medline Industries, Inc. v. All-Med Supply & Equipment, 94-1504 (La.App. 1st Cir.4/7/95), 653 So.2d 830, 832; O'Niell v. Louisiana Power & Light Company, 558 So.2d 1235, 1238 (La.App. 1st Cir. 1990).

Claim for Pre-Enactment Contributions
Louisiana Civil Code article 121 provides:
In a proceeding for divorce or thereafter, the court may award a party a sum for his financial contributions made during the marriage to education or training of his spouse that increased the spouse's earning power, to the extent that the claimant did not benefit during the marriage from the increased earning power.
The sum awarded may be in addition to a sum for support and to property received in the partition of community property.
This article recognizes the existence of a cause of action for financial contributions by one spouse to the education or training of the other spouse, and the provisions of this article are based on former LSA-C.C. art. 161 as enacted by 1986 La. Acts, No. 780. LSA-C.C. art. 121, 1990 revision comment (a). Section 2 of Act 780 provided:
The provisions of this Act are prospective in nature, and shall have no effect on any action of nullity of marriage, separation, or divorce initiated prior to the effective date of this Act, or any action ancillary to such a proceeding.
Andre argues that Renee should not be entitled to reimbursement for contributions made to his education prior to the effective date of LSA-C.C. art. 161. The enabling legislation clearly directs that the date Renee filed the petition for divorce, not the dates Andre attended law school, is determinative of the codal article's applicability. See Krielow v. Krielow, 622 So.2d 732, 740 (La.App. 3rd Cir.1993), rev'd on other grounds, 93-2539 (La.4/11/94), 635 So.2d 180.[3] Since the action for divorce was initiated after the effective date of Act 780, we conclude that the trial court properly included the financial contributions that Renee made to Andre's education during his first year of law school.

Determination of Award
The trial court is afforded discretion in determining whether a contributing spouse is entitled to an award for his financial contributions to his spouse's education or training that increased the spouse's earning power. Factors that should be considered in determining if an award is warranted include: (1) the claimant's expectation of shared benefits when the contributions were made; (2) the degree of detriment suffered by the claimant in making the contributions; and (3) the magnitude of the benefit received by the other spouse. Barrow v. Barrow, 27,714 (La.App. 2nd Cir.2/28/96), 669 So.2d 622, 629, writs denied, 96-1057, 96-1072 (La.6/21/96), 675 So.2d 1080.
Financial contributions include direct educational or training expenses, as well as living expenses, paid by the claimant for the other spouse. LSA-C.C. art. 121, 1990 revision comment (d). The following formula *1009 has been used in arriving at an equitable sum for financial contributions:
working spouse's financial contributions to joint living expenses and educational costs of student spouse
less
½(working spouse's financial contributions plus student spouse's financial contributions less cost of education)
equals
equitable sum to working spouse for financial contributions.
See McConathy v. McConathy, 25,542 (La. App. 2nd Cir.2/23/94), 632 So.2d 1200, 1205, writ denied, 94-0750 (La.5/6/94), 637 So.2d 1052. Using this formula, the trial court determined the equitable sum for financial contributions to which Renee may be entitled was $4,886.44. Based on the financial information presented at trial, the parties do not dispute the trial court's factual calculation, nor do we find manifest error in the calculation. Nonetheless, we must determine if Renee is entitled to an award of such an amount under LSA-C.C. art. 121.
In reasons for judgment, the trial court stated:
The next issue that the court will take up is whether Ms. Bourgeois is entitled to an additional sum that may be awarded by the court, in addition to the net financial contribution made to the household and enhancement of Mr. Bourgeois' license. The sum would be awarded to Ms. Bourgeois in the event that the court finds that she did not benefit from the increased earning power of Mr. Bourgeois subsequent to his obtaining his law degree.
Louisiana Civil Code article 121 clearly limits an award for financial contributions "to the extent that the claimant did not benefit during the marriage from the increased earning power." Therefore, once a calculation of an equitable sum for financial contributions is made, the court must also examine the benefits, if any, derived by the claimant from the increased earning power of the supported spouse. Where the marriage has continued for such a period of time that the contributing spouse has had sufficient time to enjoy an improved standard of living or an accumulation of community property during the existence of the marriage, such a calculation of financial contributions is subject to reduction or possible elimination. See LSA-C.C. art. 121, 1990 revision comment (e). Therefore, we disagree with the trial court's statement regarding a determination of whether Renee was entitled to a sum in addition to the net financial contributions. Accordingly, we find that the trial court legally erred in its interpretation of this article so as to allow for an increase as opposed to a decrease in the calculation of financial contributions to the working spouse.
In deciding on an award regarding her financial contributions, a determination must be made as to the extent to which Renee benefited from Andre's increased earning power prior to their divorce. As previously noted, to the extent that the contributing spouse has already benefited by the education or training, the calculation of financial contributions is subject to reduction.[4] The trial court recognized that the marriage continued for approximately three years following Andre's graduation from law school during which time the trial court found Renee "substantially benefited" *1010 from "the substantial increase" in Andre's income. We review the evidence to determine if the trial court's finding to this effect is reasonably supported by the record.
In 1988, Andre earned $15,391 working for the Nineteenth Judicial District Court and the District Attorney while attending school. The following year, Andre's continued employment with the Nineteenth Judicial District Court brought in an income of $3,350. In that same year, Andre earned wages of $30,304.86 while working with a private law firm. Thus, Andre's 1989 earnings as a full time employee increased by approximately 100 percent over that of 1988. His 1990 earnings increased by approximately 16 percent over that of 1989, and his 1991 earnings by approximately 13 percent over that of 1990.[5] In those three years, he averaged an annual increase in wages of approximately $5,000.
While in law school, the couple resided in a one bedroom, one bathroom apartment on campus. In 1987, a new vehicle was purchased for Renee's use. Following his graduation, the couple moved into a nicer, better equipped two bedroom, two bathroom apartment. They also purchased a replacement vehicle for Renee, because the vehicle purchased in 1987 had been involved in a collision, as well as one for Andre. Both of these newly purchased vehicles were financed. The increased earnings also made it possible for Renee to obtain cosmetic surgery and to upgrade her engagement ring.
In making an award for financial contributions to education, we are mindful that the relevant equitable considerations weigh most heavily in favor of the contributing spouse in cases where the timing of the divorce prevents the contributing spouse from realizing benefits from the contributions made during the marriage. LSA-C.C. art. 121, 1990 revision comment (c). The usual situation that has prompted the making of awards of this kind has involved one spouse who supported the other through professional school, only to be divorced by the educated spouse shortly after graduation. In such a case, the supporting spouse has had little opportunity to share in the educated spouse's enhanced income, and ordinarily little or no community property has accumulated to be divided between them.[6] LSA-C.C. art. 121, 1990 revision comment (c).
Absent evidence of Andre's educational background and work experience prior to his entrance into law school, we have no way of knowing exactly what Andre's true earning potential was at that time. Prior to their divorce, Andre experienced an increase in his income following his graduation from law school. Admittedly, the couple had more money available for spending once Andre was able to work on a full time basis. The trial court made a finding of fact that Renee "substantially benefited" from the "substantial increase" in Andre's income. Our review of the evidence leads us to the conclusion that the trial court's finding is reasonably supported by the record and is not clearly wrong. Although the trial court did not assign a dollar value to these substantial benefits, we find that these benefits had a value of at least $4,886.44. Since the award for financial contributions is limited to the extent that the claimant did not benefit during the marriage from the increased earning power, we hold that no award for Renee's financial contributions to Andre's law *1011 school education is authorized under the facts of this case.

Decree
For the foregoing reasons, the judgment of the trial court awarding Renee T. Bourgeois $4,886.44 is reversed, and judgment is rendered in favor of Andre G. Bourgeois.[7] Costs are assessed against Renee T. Bourgeois.
REVERSED AND RENDERED.
CARTER, C.J., and LANIER, J., dissent with reasons.
CARTER, C.J., and LANIER, J. Dissent and assign reasons.
We respectfully dissent from the majority opinion reversing the award of $4,886.44 to Ms. Bourgeois. Louisiana Civil Code article 121 provides as follows:
In a proceeding for divorce or thereafter, the court may award a party a sum for his financial contributions made during the marriage to education or training of his spouse that increased the spouse's earning power, to the extent that the claimant did not benefit during the marriage from the increased earning power.
The sum awarded may be in addition to a sum for support and to property received in the partition of community property.
The trial judge found that (1) Ms. Bourgeois made financial contributions during the marriage to educate and train Mr. Bourgeois; (2) this education and training increased Mr. Bourgeois' earning capacity; (3) Ms. Bourgeois had some benefit during the marriage from the increased earning power of Mr. Bourgeois; and (4) Ms. Bourgeois was entitled to an additional award to properly compensate her for her contributions to Mr. Bourgeois' education, training and increased earning power. These are factual findings that are not manifestly erroneous.
The trial court judge exercised his great discretion and fixed an equitable award to reimburse Ms. Bourgeois at $4,886.44. This award is not an abuse of the trial judge's discretion.
The majority opinion uses a super-technical methodology to analyze this issue, and is in error both factually and legally.
Therefore, we respectfully dissent and would affirm the decision of the trial court.
NOTES
[1] Judge Walter I. Lanier, Jr., retired from the Louisiana Court of Appeal, First Circuit, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Judge Ian W. Claiborne, retired from the Eighteenth Judicial District Court, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[3] Cf. Holland v. Holland, 539 So.2d 1011 (La. App. 4th Cir.1989), which denied a claim for contributions to education made before the effective date of former LSA-C.C. art. 161 based on the fact that the original petition for separation was filed prior to the effective date of the statute.
[4] See Katherine S. Spaht, Persons and Matrimonial Regimes, 47 La. L.Rev. 392, 396 (1986).
[5] Andre earned wages in the amount of $39,108.38 in 1990 and $44,341.70 in 1991.
[6] The record in this case has very little evidence as to the Bourgeois' accumulation and division of community property.
[7] In light of this ruling, the issue regarding legal interest is rendered moot.